Charles Philip RAINWATER,
Plaintiff–Appellee,

v.

NATIONAL HOME INSURANCE
COMPANY, Defendant–
Appellant.

NATIONAL HOME INSURANCE
COMPANY, Plaintiff–
Appellant,

v.

Charles Philip RAINWATER,
Defendant–Appellee.

Nos. 91–2316, 91–2318.

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1991.

Decided Sept. 5, 1991.

As Amended Oct. 22, 1991.

Thomas Francis Farrell, II (John F. Anderson, on brief), McGuire, Woods, Battle & Boothe, Alexandria, Va., for defendant-appellant.

Michael S. Lieberman (Bernard J. DiMuro, on brief), DiMuro, Ginsberg & Lieberman, P.C., Alexandria, Va., for defendant-appellee.

Before RUSSELL, PHILLIPS and SPROUSE, Circuit Judges.

## OPINION

PER CURIAM:

This appeal raises the question whether a home warranty contract provided for final and binding arbitration in disputes on coverage between a claimant and the underwriter, or whether the arbitration process

was to be a mere interlude preceding litigation. The district court found the arbitration provision one for final and binding arbitration and in response to the claimant's petition for confirmation of the arbitration award, entered judgment for him based on his unchallenged cost of repairs. We affirm.

## I

C. Phillip Rainwater purchased a house in McLean, Virginia, and as part of the purchase, obtained a Home Buyers Warranty Contract from Home Buyers Warranty ("HBW"), with defendant National Home Insurance Corp. ("NHIC") as the underwriter. The warranty covered certain defects in workmanship and materials, problems with electrical and plumbing systems, and certain qualified structural defects, all of which must first occur during the warranty period. The warranty also contained a section titled, "Section VII—Conciliation and Arbitration." This section provided that a homeowner in disagreement with a coverage decision by HBW or NHIC could "call for conciliation with [HBW] or an arbitration to be conducted by the American Arbitration Association (A.A.A.)," according to the rules of the AAA. This section further provided that "[t]he voluntary dispute settlement process provided herein shall be a condition precedent to the commencement of any litigation by any party to compel compliance with the warranty documents or to seek relief for any dispute arising out of this program."

Within a year of purchasing the house, Rainwater discovered a substantial crack in the foundation. He made a claim under the warranty, but NHIC denied the claim on the basis that the defect in the foundation did not first occur during the warranty period. In denying the claim, NHIC also informed Rainwater that he was required under the terms of the warranty to submit his claim to arbitration "prior to the commencement of litigation." Rainwater then requested arbitration, and sought to have the scope of the arbitration cover the issue of when the defect first occurred as well as whether the defect qualified as a "structural defect" under the warranty, and the reasonable cost of repair. The arbitrator decided, however, to limit the scope of arbitration to whether the defect first occurred during the warranty period and whether it was a qualified "structural defect." The arbitrator did not reach the reasonable cost question because he evidently believed that money damages could not be awarded as part of the arbitration.

After taking evidence the arbitrator issued an award finding that the defect first arose during the warranty period and that it was a qualified structural defect. NHIC appealed the award under AAA rules. In addition, Rainwater requested a modification of the award to provide for monetary damages of $206,500—the amount that Rainwater spent to have the defect repaired. The arbitrator modified the award by directing NHIC to complete the repairs within sixty days, but the request for specific damages was denied. The arbitrator's decision was upheld on appeal.

NHIC then filed this declaratory judgment action seeking a declaration that it was not liable under the warranty. Rainwater responded by filing a motion to dismiss and/or summary judgment and also filed a petition for confirmation of the arbitration award pursuant to 9 U.S.C. § 9. NHIC answered the confirmation petition and moved to dismiss it. The district court consolidated the cases for oral argument and after a hearing granted both Rainwater's motion to dismiss NHIC's declaratory judgment action and his petition for confirmation. The court, after a colloquy with NHIC's counsel, then determined that the monetary amount was "not an issue" and so entered judgment for the amount it cost to fix the defect. NHIC then filed a motion for modification under Fed.R.Civ.P. 59(e), contending that the court was confused and that the amount was in fact disputed even though it was "not an issue" in the case. The court denied that motion. This appeal by NHIC followed.

## II

We begin by recognizing the "liberal federal policy favoring arbitration," *Moses H.*

*Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). That policy holds that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Id.* at 24–25, 103 S.Ct. at 941. More important for our purposes, that policy also provides that once an arbitration award is made and the parties agree to entry of judgment then the award should be confirmed unless it was tainted by corruption, fraud, partiality, misconduct, or an arbitrator exceeded his authority. 9 U.S.C. §§ 9, 10. And we note the presumption that one submits to arbitration, as opposed to mediation, precisely *because of the binding quality of the process. See* 2A Michie's *Jurisprudence, Arbitration* § 4, at 28 ("[I]t is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract."). In sum, we approach the issues on appeal here guided by a congressional policy that favors and encourages arbitration precisely because it is thought to be a speedy, inexpensive and efficient way to *resolve* (as opposed to prolong) disputes without consuming court time.

### A

■ The core question is whether the parties agreed to arbitration as a binding process, one that would bar litigation, or whether the agreement to arbitrate was simply a dispute settlement process that was a condition precedent to litigation. This determination is critical because the Federal Arbitration Act provides that

> [i]f the parties in their agreement [to arbitrate] have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, ... then at any time within one year ... any party to the arbitration may apply to the court ... for an order confirming the award, and thereupon the court must grant such an order [with exceptions not relevant here].

9 U.S.C. § 9. Thus, a court has jurisdiction to confirm an award only if the parties

have agreed that the award is final. *I/S Stavborg (O.H. Meling, Manager) v. National Metal Fasteners, Inc.*, 500 F.2d 424 (2d Cir.1974).

■ The starting point of course is the agreement itself, since an agreement to arbitrate is a contract and must be interpreted like any other contract. *Saturn Distribution Corp. v. Williams*, 905 F.2d 719 (4th Cir.1990). The warranty describes the following procedures to be followed in the event of a disagreement between a homeowner and underwriter on a claim:

> Should the Builder or Homebuyer(s) disagree with the Insurer's decision to deny the claim ..., the contesting party shall call for conciliation with [HBW] or an arbitration to be conducted by the American Arbitration Association (A.A.A.),.... The conciliation and/or arbitration process will be conducted in accordance with the warranty conditions described herein and the rules and regulations of the A.A.A. ... The voluntary dispute settlement process provided herein shall be a condition precedent to the commencement of any litigation by any party to compel compliance with the warrant documents or to seek relief for any dispute arising out of this program.

We note that this contract was drafted by NHIC and therefore should be construed against them when ambiguities are present. As support for his position, Rainwater points to the provision in the warranty that the "rules and regulations of the AAA" will apply. At the time of the arbitration, *see* AAA Rule 1 ("The parties shall be deemed to have agreed to these rules in the form in effect when the request for dispute settlement is received by the AAA."), Rule 26(c) of the AAA provided:

> Unless the applicable law or the warranty program, the insurance policy, or another applicable document provides otherwise, the parties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

Based on this rule, Rainwater argues that the arbitration award in his favor, issued

pursuant to AAA rules, was intended to be final and consequently must be confirmed. The district court agreed, and so do.

we.

Other courts also have held that reference to AAA rules and regulations is enough to make arbitration binding. In *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272–73 (7th Cir. 1976), which involved arbitration of a uranium supply contract, the court held that although the parties did not expressly agree that arbitration would be binding and judgment could be entered, the parties did agree "to incorporate rules of arbitration into their agreement, thereby establishing the requisite consent to entry of judgment, if the rules so provided." In *Commonwealth Edison*, as in here, the rules do so provide for entry of judgment. Similarly in *Stavborg*, 500 F.2d 424, the court held that an explicit agreement to be bound by arbitration and consent to judgment was not required, but could be inferred by reference to rules which do provide for binding arbitration. To the same effect is *Varley v. Tarrytown Assocs., Inc.*, 477 F.2d 208, 210 (2d Cir.1973), in which the court held that "confirmation of an arbitration award is appropriate only where the parties 'in their agreement have agreed that a judgment of the court shall be entered upon the award....'" The *Varley* court conceded that the parties could express agreement by incorporating arbitration rules, however it found that the rules referred to, the AAA rules in existence at that time, did not allow for entry of judgment. *See also Oklahoma City Assocs. v. Wal–Mart Stores, Inc.*, 923 F.2d 791 (10th Cir.1991) (court holds that parties could implicitly consent to AAA rules and entry of judgment, but found no evidence of such consent where arbitration agreement not referred to AAA).

NHIC contends that *Commonwealth Edison* and *Stavborg* are distinguishable because they involve commercial arbitration and not homeowner warranty programs. We are unconvinced that this distinction makes a difference. NHIC also points out, correctly, that *Stavborg* involved an arbitration clause which provided that the decision of the arbitrators "shall be final." 500 F.2d at 425. From this it contends that before a court can look to whether the AAA rules allow for entry of judgment a court must first determine whether the arbitration clause in the agreement stipulates that it should be "final" or "binding." In short, NHIC contends that the AAA rules included by incorporation can make arbitration confirmable, allowing entry of judgment, but they cannot make an award "final."

NHIC's reliance on *Stavborg*, in which the agreement referred to arbitration as "final," relies too heavily on the presence of "final" in the arbitration agreement. Such "magic words" requirements are unnecessary. In *Commonwealth Edison*, the arbitration clause stated, "Any dispute arising from this Contract, ... shall be submitted to arbitration on request of either party." 541 F.2d at 1266. Yet in that case the Second Circuit held that the AAA rules, which were incorporated in the agreement, evidenced agreement by the parties that the arbitration was final and subject to confirmation by a federal court. Similarly in *Varley v. Tarrytown Assocs.*, the arbitration clause read: "Any controversy arising under this agreement or breach thereof shall be settled by arbitration pursuant to the rules of the [AAA]." 477 F.2d at 209. The *Varley* court held that the district court lacked jurisdiction to confirm not because the arbitration provision failed to include "final" or "binding," but rather because the AAA rules in effect at that time, which were incorporated in the agreement, did not provide for entry of judgment upon an award. *Id.* at 210.

Closer analysis also shows that the decision of the *Stavborg* court turned on the characterization of the arbitral award as "final" only because the arbitration clause did not include reference to AAA rules. Thus, in *Stavborg* the court needed evidence of finality to make the award confirmable and found it in "final." In contrast, the Second Circuit in *Varley* and the Seventh Circuit in *Commonwealth Edison* did not focus on "final" but instead looked

to the incorporated AAA rules to see if they provided for finality and entry of judgment. We do the same here and find in AAA Rule 26(c) a provision reflecting agreement to a final and binding award.

All this shows that the test advanced by NHIC, that the parties must expressly agree that arbitration is "final" or "binding" before a court can look to the AAA rules, is one not supported by the cases. In fact, the decisions holding that reference to AAA rules as permitting entry of judgment are long standing. *See Stavborg; Varley; Commonwealth Edison.* Consequently, all parties are on notice, especially a sophisticated draftsman like NHIC, that resort to AAA arbitration will be deemed both binding and subject to entry of judgment unless the parties expressly stipulate to the contrary.

NHIC contends that the parties did expressly stipulate to the contrary. Citing the AAA rules that unless the warranty expresses "otherwise" consent to judgment will be presumed, NHIC points to a sentence which it contends shows "otherwise." That portion of the warranty states: "The voluntary dispute settlement process provided herein shall be a condition precedent to the commencement of any litigation by any party to compel compliance with the warrant documents or to seek relief for any dispute arising out of this program." The clause "shall be a condition precedent," NHIC maintains, is evidence that the parties contemplated future litigation and thus means that arbitration is not binding.

Though NHIC's claim has some surface appeal, we think that the "condition precedent" language cannot carry all the weight NHIC would ascribe to it. Traditionally, federal courts were hostile to arbitration clauses since it was thought they could be avoided at the whim of either party. *See generally Continental Grain Co. v. Dant & Russell, Inc.,* 118 F.2d 967 (9th Cir.1941) (arbitration agreements could not be enforced in federal courts prior to passage of FAA). As a result, parties frequently included "condition precedent" language to make certain that the arbitration process ran its course before a federal court could entertain a suit. *See, e.g., Pettus v. Olga Coal Co.,* 137 W.Va. 492, 72 S.E.2d 881, 885 (1952) (holding that condition precedent language did not oust court of jurisdiction, something frowned upon at common law, but rather made suit premature until the terms of the contract were fulfilled). Therefore, we read "condition precedent" to some extent as an artifact left over from the days of hostility toward arbitration. To the extent that the phrase has meaning, we find that it does not undermine the binding nature of arbitration, but instead applies to the confirmation process permitted by 9 U.S.C. § 9, or to other litigation in which the arbitration award would be final but just a sub-text in some larger litigation context.

Accordingly, we affirm the district court's holding that the parties agreed that arbitration should be final and binding, and that as a result the arbitration award should be confirmed as made.

### III

■ NHIC also contends that the district court exceeded its authority by entering a monetary judgment when the arbitrator had not entered a monetary award. We disagree.

When HBW and NHIC were slow to respond to his claim for warranty coverage, Rainwater went ahead and had the foundation repaired for $206,500. At arbitration Rainwater sought a declaration that the defect was qualified for coverage and that NHIC should reimburse him $206,500 for his reasonable expenses. Before the hearing was held, NHIC objected to this scope of the arbitration on the grounds that the arbitrator was not permitted under the applicable rules governing home warranties to award monetary damages. Rainwater contended that such damages could be awarded, and proceeded to introduce evidence from his engineer as to the necessity and reasonableness of the repairs as well as his own testimony on the costs of the repairs. This testimony was subject to cross-examination by NHIC and was not seriously contested and remains unrebutted. However, the arbitrator ruled that it

had no authority to award monetary damages.

In his petition for confirmation, Rainwater made it clear that he wanted an entry of judgment to include monetary damages. It was equally clear from oral argument before the district court that the amount spent by Rainwater was not in controversy, only whether the arbitration was intended to be binding. At the outset the following exchange took place between NHIC's counsel and the court:

COURT: Do you agree that the case is ripe for summary judgment one way or another?

[NHIC Counsel]: Yes, sir, we do.

COURT: There are no issues of fact?

[NHIC Counsel]: No, sir, Your Honor. We believe this calls for the Court to interpret the language of the warranty.

COURT: I take it the amount of the award is not an issue in the case either?

[NHIC Counsel]: No, sir, it's not, Your Honor.

J.A. at 25. Then at the end when the court indicated that it was going to rule for Rainwater and hold the arbitration binding, the question of monetary damages was again broached.

COURT: And there being no dispute about the amount of the award, and one of these cases being the flip side of the other, the defendant's motion to dismiss or for summary judgment in the case brought by [NHIC] will be granted.

The plaintiff's motion to grant the petition for confirmation of the arbitration award in ... the case brought by Mr. Rainwater, will be granted.

\*   \*   \*   \*   \*   \*

[Plaintiff's Counsel]: Is that judgment going to be entered for roughly $206,000?

COURT: Whatever that—I understand the amount is not an issue in the case. The award said approximately $200,000.

[Plaintiff's Counsel]: $206,500.

COURT: Right, but the award said it was a reasonable amount. As I recall, it was in the neighborhood of $200,000; and I think $206,000 is within, is approximately $200,000. Since that amount is not the issue in the case anyway, I will enter an award on that, in that amount.

[Plaintiff's Counsel]: Thank you, Your Honor.

J.A. at 34–35. And that was the end of the hearing; nothing more was said by either side. On this basis the court entered judgment for $206,605.16.

Shortly after receiving the court's order NHIC moved to alter or amend judgment, contending that the court was mistaken and that the amount was actually disputed, just not an "issue," since it had not been contested yet. The court responded that "the colloquy with counsel ... when taken in context, reasonably conveyed to the court that the defendant did not contest the amount of the arbitration award...." Finding that the amount "was within the parameters of the 'reasonable estimate,'" the court therefore denied the motion.

We agree with the district court that when counsel for NHIC said the damage amount was "not an issue" the court was entitled to act upon this as a concession binding upon the client. The award the court was asked to confirm provided: "[NHIC] shall repair, replace, or pay to the [Rainwaters] the reasonable cost to repair the [foundation wall]." The court obviously believed that it was giving meaning to "reasonable" by awarding $206,500, when the evidence supporting that figure was uncontradicted and unrebutted and, as NHIC counsel had agreed, "not an issue." We agree and reject NHIC's later contention that the court improperly expanded the arbitrator's award rather than merely confirming it. Accordingly, we affirm the judgment of the district court confirming the arbitration award and entering judgment for Rainwater against NHIC in the amount of $206,605.16.

AFFIRMED.