**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAVIDSON COUNTY, a Body Politic,
<u>Plaintiff-Appellee,</u>

v.

No. 95-2176

GROUND IMPROVEMENT TECHNIQUES,
INCORPORATED, a Florida corporation,
<u>Defendant-Appellant.</u>

DAVIDSON COUNTY, a Body Politic,
<u>Plaintiff-Appellant,</u>

v.

No. 95-2264

GROUND IMPROVEMENT TECHNIQUES,
INCORPORATED, a Florida corporation,
<u>Defendant-Appellee.</u>

Appeals from the United States District Court
for the Middle District of North Carolina, at Salisbury.
James A. Beaty, Jr., District Judge.
(CA-94-746-4)

Argued: March 6, 1996

Decided: April 24, 1996

Before RUSSELL, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Steven Roger Schooley, HOLLAND & KNIGHT, Orlando, Florida, for Appellant. Joe Earl Biesecker, WILSON, BIE-SECKER, TRIPP & SINK, Lexington, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This is a diversity action involving a dispute over a construction contract between Ground Improvements Techniques, Inc. ("GIT"), a Florida corporation with its principal place of business in Pennsylvania, and Davidson County, a body politic and governmental subdivision in North Carolina. Upon examining and interpreting the construction contract, the district court denied GIT's petition to stay litigation and compel arbitration, Davidson County's motion to stay any impending arbitration, and denied Davidson County's motion to remand the case to Davidson County Superior Court. Pursuant to 9 U.S.C. § 16(a)(1), we exercise interlocutory jurisdiction over the district court's order denying GIT's petition to stay litigation and compel arbitration. Reviewing de novo the district court's interpretation and construction of the contract, see Nehi Bottling Co., Inc. v. All-American Bottling Corp., 8 F.3d 157, 162 (4th Cir. 1993), we affirm.

We dismiss Davidson County's cross-appeal for lack of jurisdiction because the order denying Davidson County's motion to remand is interlocutory and not immediately appealable. 28 U.S.C. § 1291.

I.

On December 22, 1993, Davidson County and GIT entered into a standard construction contract. After GIT began construction, David-

2

son County accused GIT of non-performance. The contract required that disputes be referred to the engineer before proceeding to any form of dispute resolution. Initially, Exhibit GC-A of the contract, entitled "Dispute Resolution Agreement" (¶¶s 16.1-16.7), permitted submitting those disputes resolved by the engineer to the American Arbitration Association ("AAA") for arbitration. The parties, however, modified and personalized the standard contract with "Supplementary Conditions," which specifically deleted Exhibit GC-A from the contract. Supplementary Conditions section, Article 16, SC 16.1 stated: "Exhibit GC-A has been deleted."

Nonetheless, in late October 1994, GIT formally demanded that the parties proceed to arbitration. In support of its demand, GIT cited the deleted arbitration clause (Exhibit GC-A) and other minor references to arbitration within the contract.[1] Davidson County responded that the Supplementary Conditions' specific deletion of the arbitration requirement superseded all references to arbitration in the General Conditions.

On December 15, 1994, Davidson County filed an action in the Davidson County Superior Court against GIT for breach of contract, alleging that GIT had failed to complete the project as required by the construction contract. The following day, Davidson County obtained an ex parte temporary restraining order from Davidson County Superior Court forbidding GIT from proceeding to arbitration. GIT removed the case to the United States District Court for the Middle District of North Carolina under the court's diversity jurisdiction. 28 U.S.C. § 1441. On January 9, 1995, GIT filed a petition to stay litigation and compel arbitration pursuant to 9 U.S.C.§§ 3 and 4.[2] The next day GIT requested that the AAA continue administrating the arbitration proceedings. On January 27, Davidson County filed a motion for an immediate stay of any impending arbitration and demanded a jury trial in district court pursuant to 9 U.S.C. § 4.

_____

[1] GIT cites the mere use of the word "arbitration" in the Table of Contents of General Conditions, the Index to General Terms and a number of paragraphs in support of their contention that the contract mandated arbitration.

[2] Title 9 of the United States Code codifies the Federal Arbitration Act.

3

On May 5, the district court entered its Memorandum Opinion and Order refusing to compel arbitration and granting Davidson County's motion to stay any impending arbitration. It denied Davidson County's motion to remand the case to Davidson County Superior Court. Although the district court acknowledged our preference for arbitration, it also recognized our reticence to compel arbitration when the contract contains an unambiguous clause not to compel arbitration. See Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989). After finding that GIT and Davidson County bargained at arm's-length for both the contract and the supplementary conditions deleting arbitration, the district court concluded it could not compel the parties to arbitrate without an express agreement to arbitrate. As to Davidson County's motion to remand the controversy to Davidson County Superior Court, the district court found the contract contained a valid choice-of-law provision, under which the district court was an appropriate forum for resolving the dispute.

II.

GIT contends its contract with Davidson County mandated arbitration. We disagree.

The Federal Arbitration Act does not confer a right to compel arbitration of any dispute at any time; instead it confers only the right to obtain an order directing that arbitration proceed in the manner provided for in the parties' agreement. Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ., 489 U.S. 468, 474-75 (1989). Thus, we examine the construction contract to establish whether the parties were bound themselves to arbitrate. Rainwater v. National Home Insurance Co., 944 F.2d 190, 192 (4th Cir. 1991).

Initially, the contract before us was a standard construction contract, which the parties amended and particularized to suit their unique needs by including "Supplementary Conditions." Prior to the Supplementary Conditions, Article 16 of the standard contract, Dispute Resolution," outlined that Exhibit GC-A, Dispute Resolution Agreement" would detail the specific resolution mechanisms agreed upon by the parties. Article 16 stated:

4

If and to the extent that [Davidson County] and [GIT] have agreed on the method and procedure for resolving disputes between them that may arise under the Agreement, such dispute resolution method and procedure, if any shall be as set forth in Exhibit GC-A, "Dispute Resolution Agreement," to be attached hereto and made a part hereof. If no such agreement on the method and procedure for resolving such disputes has been reached . . . [Davidson County] and [GIT] may exercise such rights or remedies as either may otherwise have under the Contract Documents or by laws or regulations in respect of any dispute.

And Exhibit GC-A, whose text encompassed ¶¶s 16.1 - 16.7, contained an arbitration agreement. Exhibit GC-A stated that:

All claims, disputes and other matters in question between Davidson County and GIT arising out of or relating to the Contract Documents or the breach thereof . . . will be decided by arbitration in accordance with the construction Industry Arbitration Rules of the AAA . . . This agreement so to arbitrate and any other agreement or consent to arbitrate entered into in accordance herewith as provided in Article 16 will be specifically enforceable under the prevailing law of any court having jurisdiction.

But Article 16, SC-16 of the Supplementary Conditions expressly deleted Exhibit GC-A from the contract. Notwithstanding the deletion, GIT argues that SC-16.1's language--"Exhibit GC-A has been deleted"--deleted only Exhibit GC-A's title caption, "Dispute Resolution Agreement," and not the text following the title. This argument is manifestly without merit; it is inconceivable that SC-16 did not delete both the title and the text of Exhibit GC-A. In fact, deleting Exhibit GC-A from the contract also deleted any other references to arbitration within the contract, because when an individual paragraph utilized the word arbitration, it was done so with respect to arbitration as permitted by Exhibit GC-A. Thus, once Exhibit GC-A was deleted from the contract, Article 16 of the General Conditions dictated alternative dispute resolution mechanisms. Article 16 instructs that absent the incorporation of an arbitration agreement in Exhibit GC-A, the parties can pursue their contract claims through court litigation.

5

By arguing that neither "Exhibit GC-A" nor the other minor references to arbitration were physically redacted from the contract, GIT attempts to create a loophole through which it could compel arbitration. The references GIT cites, however, never affirmatively bound the parties to arbitration. Furthermore, they were "technically" deleted by the contract's Supplementary Conditions. As the district court found, the parties intent was clear--they expressly chose not to arbitrate. Thus, we affirm the district court's order denying compelled arbitration.

III.

GIT argues, alternatively, that if arbitration was not mandated as a matter of law, then the plain language of 9 U.S.C.§ 4 of the Federal Arbitration Act required the district court to enter an order empaneling a jury to resolve the construction contract's "arbitrability." We disagree with GIT's construction of this statute.

Title 9, section 4 of the United States Code provides:

> If the making of the arbitration agreement or the failure, neglect or refusal to perform the same be in issue, the court shall proceed summarily to trial thereof. . . . Where such an issue is raised, the party alleged to be in default may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury.

Accordingly, if the making of the arbitration agreement is in issue within the meaning of 9 U.S.C. § 4, the district court must proceed summarily to a trial by jury.

Neither the "making of the arbitration agreement" nor "the failure, neglect, or refusal to perform" can be in issue within the meaning of 9 U.S.C § 4. We have already held that the district court correctly found that the bargained-for contract between GIT and Davidson County unambiguously precluded arbitration as a means of dispute resolution between the parties. A party cannot make arbitrability "in issue" merely by alleging that the parties' intended to arbitrate dis-

6

putes <u>when</u> there is clear evidence to the contrary. Section 4 would have been available here if an arbitration provision existed in the parties' construction contract, or if the contract was silent as to dispute resolution. Because GIT and Davidson County expressly precluded arbitration as a dispute resolution mechanism, GIT cannot legitimately claim that arbitrability is in issue. Accordingly, the Federal Arbitration Act does not mandate a jury trial in this instance.

IV.

On cross-appeal, Davidson County contends that the district court erred in not remanding the case to the Davidson County Superior Court. We conclude that we do not have jurisdiction to review the district court's interlocutory order denying remand.

We exercise statutory jurisdiction over final orders, 28 U.S.C. § 1291, and certain interlocutory orders. 28 U.S.C. § 1292. "It is, of course, beyond question that an order of a district court denying a motion to remand, standing alone, is not a final order appealable under 28 U.S.C. § 1291." <u>Three J Farms, Inc. v. Alton Box Board Co.</u>, 609 F.2d 112, 114 (4th Cir. 1979).

V.

For the foregoing reasons, the memorandum and order of the district court is

<u>AFFIRMED</u>.

7