## OAKWOOD MOBILE HOMES, INC., et al., Petitioners,

v.

## Gail L. STEVENS, et al., Respondents.

### No. Civ.A. 2:02–0241.

United States District Court, S.D. West Virginia, Charleston Division.

May 31, 2002.

John J. Nesius, Marcy E. Aber, Spilman, Thomas & Battle, Charleston, West Virginia, for petitioners.

Henry E. Wood, III, Wood Law Office, L.C., Charleston, West Virginia, for respondents.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Petitioners' Application for Confirmation of Arbitrator's Award. The Court **GRANTS** the Application.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2000 Respondents David Fransen and Gail Stevens contracted with Petitioners, Oakwood Mobile Homes, Incorporated and Oakwood Acceptance Corporation, for the purchase of a manufactured home. Incidental to the contract, Respondents were required to execute an arbitration agreement (the "Agreement"). The Agreement provides pertinently:

> All claims, disputes, and controversies ... will to the fullest extent permitted by Federal law be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules.
>
> . . . .
>
> Judgment on the decision or award may be entered by any court having jurisdiction.
>
> . . . .
>
> This agreement shall be governed by and construed and enforced in accordance with the federal laws of the Unit-

ed States without regard to any choice of governing law contained in the Contract.

(Ex. B, Resps.' Resp. to Br. and Desig. Order.) [1]

On April 9, 2001 Respondents submitted a Notice of Intention to Arbitrate under the Agreement listing a host of defects in the home. Under "RELIEF REQUESTED" in the Notice, Respondents demanded:

> [R]ecission of the contract, reimbursement of all payments made on the mobile home, attorneys fees and costs associated with this arbitration, general compensatory and punitive damages for loss of use and enjoyment, annoyance and inconvenience and such other relief both in law and equity as this Court shall deem just and proper. The total relief requested equals $95,000.00.

> By filing this "NOTICE OF INTENTION TO ARBITRATE", the Buyers do not waive their right to proceed to a Court of competent jurisdiction for resolution of this controversy.

(Ex. C, Resps.' Resp. to Br. and Desig. Order.)

On the day the arbitration hearing was scheduled, Respondents submitted to the arbitrator a Motion to Dismiss From Arbitration. The motion asserted the Agreement was unconscionable and void. Arbitrator William J. Quinn II denied the motion. On January 9, 2002 the Arbitrator made the following award:

1. The sum of $3,000.00 to Respondents for their claim;

2. Prejudgment interest at the rate of 7%;

3. The sum of $1,000.00 to Respondents for attorney fees;

4. Additional repairs by Petitioners at no cost to Respondents; and

5. The sum of $3,883.06 from Petitioners to the AAA for fees and expenses.

On December 11, 2001 Respondents instituted an action against Petitioners in the Circuit Court of Putnam County. The complaint alleges breach of warranty and other claims. It also asserts Petitioners engaged in "deceptive, unfair, and unconscionable behavior in violation of" the West Virginia Consumer Credit and Protection Act, *West Virginia Code* §§ 46A–6–101 *et seq.*

On January 25, 2002 Petitioners filed the pending Application with this Court for confirmation of the arbitration award pursuant to 9 U.S.C. § 9. Respondents opposed the application, asserting (1) the Agreement is unconscionable and void; (2) in at least one previous case the Circuit Court of Putnam County has reviewed the same Agreement in a different case and adjudged it unconscionable and void; and (3) the Agreement gives Petitioners access to the courts to resolve various disputes while Respondents are "wholly bound to arbitrate." (Resps.' Resp. to Br. and Desig. Order at 3.)

Based on an incomplete quotation from a case cited in the Application, and the Respondents' failure to address the oversight, the Court became concerned Petitioners and Respondents might be under a misapprehension concerning the Court's subject matter jurisdiction under Section 9. Accordingly, on April 30, 2002, the Court visited that area of the law in a Memorandum Opinion and Order to Show Cause and directed Petitioners to demonstrate the existence of subject matter jurisdiction. The Court stated:

> Despite the parties' briefing on the merits, there remains a substantial

---

1. The language omitted by the first ellipses lists virtually every conceivable claim, dispute and controversy that might arise out of the parties' relationship.

question regarding subject matter jurisdiction. In their initial filing, Petitioners' cite *P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir.1999) for the proposition that Section 9 of the FAA "which authorizes confirmation of arbitration awards under certain circumstances 'creates its own level of subject matter jurisdiction for confirmation under the FAA.'" This language, however, is the second prong of a "two-fold" analysis. *Id.* The first prong from *Sutter Corp.*, provides:

> Our first task is to determine whether the district court had jurisdiction to confirm the arbitration award. In arbitration confirmation cases, such as this one, the jurisdictional inquiry is twofold. *First, because the FAA "does not create any independent federal-question jurisdiction," "there must be diversity of citizenship or some other independent basis for federal jurisdiction" before a federal court can act under the FAA.*

*Id.* (citations omitted). The observation by the Court of Appeals for the Tenth Circuit appears in accord with other jurisdictions.

(Mem. Op. & Order to Show Cause at 1–2.)

On May 9, 2002 the Court of Appeals handed down its decision in *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 198–99 (4th Cir.2002), *pet. for rhg. en banc filed* (May 23, 2002). The case involved a federal court's subject matter jurisdiction under the Federal Arbitration Act and the *Rooker–Feldman* doctrine's application when proceedings are occurring in both federal and state court in relation to an arbitration agreement.

Four days later, unaware of *Dunlap*, Petitioners responded to the Court's Memorandum Opinion and Order and, without objection from Respondents, demonstrated to the Court's satisfaction the parties were diverse and that the amount in controversy exceeded $75,000.00. While this disposed of the question of diversity jurisdiction, the Court, in light of *Dunlap*, was required to investigate what obstacles, if any, were posed by the *Rooker–Feldman* doctrine. On May 15, 2002, the Court entered a Briefing Order and Notice stating:

> The Court is uncertain whether Petitioners have counterclaimed or moved in state court to enforce the award and, if so, the outcome of the counterclaim or motion. Pursuant to *Dunlap*, this issue may be important in determining whether the jurisdictional bar of the *Rooker–Feldman* doctrine applies here.

(Br. Order and Not. at 2.) The Court ordered the parties to submit a joint report on the status of, and issues presented in, the state court action and, if they so desired, to submit briefs on the *Rooker–Feldman* issue.

On May 22, 2002 the parties submitted their Joint Report. The Report reveals Petitioners indeed sought *de facto* confirmation in the state court by way of the affirmative defense of arbitration and award. Attached to the Report, however, is an "Order Continuing Hearing on Motion to Dismiss." The Order is signed by the presiding judge in state court and provides:

> [I]t is ordered that the hearing on Defendants' Motion to Dismiss shall be and is hereby continued generally, pending a resolution of the Application for Confirmation of Arbitrator's Award by the United States District Court for the Southern District of West Virginia.

(Order at 2.) The state court has taken no further action on the case.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Following Petitioner's response to the Court's April 30 Memorandum Opinion

and Order to Show Cause, the Court concluded it possessed subject matter jurisdiction to resolve this dispute. The parties are completely diverse and, given Respondents' assertion they have been damaged to the tune of $95,000.00, the amount in controversy exceeds $75,000.00. Also, given the state circuit court's stay pending resolution of the Application filed here, the *Rooker–Feldman* doctrine is not implicated.

The final jurisdictional hurdle arises from the text of Section 9, which provides pertinently:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.

In *Rainwater v. Nat'l Home Ins. Co.,* 944 F.2d 190 (4th Cir.1991), our Court of Appeals recognized "[A] court has jurisdiction to confirm an award only if the parties have agreed that the award is final." *Id.* at 192. *Rainwater* also observed "The starting point of course is the agreement itself, since an agreement to arbitrate is a contract and must be interpreted like any other contract." *Id.* (citing *Saturn Distribution Corp. v. Williams,* 905 F.2d 719 (4th Cir.1990)).

According to the Agreement, all claims, disputes and controversies are to be "resolved by binding arbitration administered by the American Arbitration Association ... under its Commercial Arbitration Rules." (Ex. B, Resps.' Resp. to Br. and Desig. Order.) For at least two reasons,

this leaves no doubt about the binding nature of the Agreement.

First, the finality intended by the parties is revealed explicitly by use of the word "binding" in relation to the arbitral proceedings. Second, the AAA Commercial Arbitration Rules then in effect, which the Agreement references as controlling, provided "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." Commerc.Arbit.R. 50(c) (1999); *Rainwater,* 944 F.2d at 193 ("Other courts also have held that reference to AAA rules and regulations is enough to make arbitration binding."). The Agreement itself practically mimics this language. The parties' intentions concerning the finality of arbitration could not be clearer.

Because (1) the Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332, (2) the *Rooker–Feldman* doctrine imposes no bar to the exercise of such jurisdiction, and (3) the parties agreed to a binding and final award confirmable by a federal district court, the Court proceeds to the merits of the Application.

### B.  The Merits of the Application

In *Taylor v. Nelson,* 788 F.2d 220 (4th Cir.1986), our Court of Appeals held:

> A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act.

*Id.* at 225. Our Court of Appeals has also observed the grounds for *vacatur* are "severely circumscribed." *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.,* 142 F.3d 188, 193 (4th Cir.1998) (stating also "Indeed, the scope of review of an arbitrator's valuation decision is among the nar-

rowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all— the quick resolution of disputes and the avoidance of the expense and delay associated with litigation."). Section 10 of the FAA states: [2]

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon, sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and defi-

nite award upon the subject matter submitted was not made.

9 U.S.C. § 10; *Rainwater,* 944 F.2d at 192 ("[O]nce an arbitration award is made and the parties agree to entry of judgment then the award should be confirmed unless it was tainted by corruption, fraud, partiality, misconduct, or an arbitrator exceeded his authority.").

Respondents' challenge to confirmation does not fall within any of these narrow categories. Rather, they assert the putative disparity of remedies between Petitioners and Respondents under the Agreement make it unconscionable and void. That argument, however, comes too late. Incredibly, it was Respondents who first pursued the arbitral forum as provided in the Agreement. If Respondents sought to challenge the Agreement on any basis, they should have done so long in advance of arbitration.[3]

The Court finds persuasive Judge Messite's good analysis in *Owen–Williams v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 907 F.Supp. 134 (D.Md.1995), *aff'd,* No. 96–1442, 1996 WL 688219 (4th Cir. Dec.2, 1996):

---

2. Section 10 deals with *vacatur;* section 11 addresses modification or correction. Given Respondents seek complete avoidance of the arbitral forum, Section 11 is inapplicable.

3. The Court is aware of two events that might cut against a finding of waiver. First, in their Notice of Intention to Arbitrate, Respondents asserted the Notice did "not waive their right to proceed to a Court of competent jurisdiction for resolution of this controversy." (Ex. C, Resps.' Resp. to Br. and Desig. Order.) This attempted general reservation of rights fails for at least two reasons. First, it in no way attacks the Agreement as unconscionable or void. Second, the very nature of binding arbitration is such that submission to the arbitral forum cuts off later court challenges except as provided specifically under the FAA.

Respondents also moved to dismiss from arbitration on the day the arbitrator was to

hear the dispute. Although that motion was more specific in alleging the Agreement was unconscionable, the Court believes this challenge also came too late. In any event, were the Court to permit Respondents to request arbitration and then, on the day the hearing is scheduled, file a *pro forma* challenge to arbitrability many problems would ensue. For example, such an approach would encourage others to request and use the arbitral forum and, with a simple reservation of rights on the day of the hearing, simply wait and determine whether they will receive a favorable result. If unsatisfied with the award, they would then proceed to the nearest court to upset arbitration. That approach would undermine the entire binding arbitration system, a system Congress, the Supreme Court, and our Court of Appeals have repeatedly and enthusiastically endorsed.

To the extent that a party is entitled to challenge the validity of an agreement to arbitrate, *the time to raise that issue is before the matter goes to arbitration, not after.* Otherwise a party could hold back, await the outcome of the arbitration, and then blithely render it null simply by challenging the validity of the proceedings. *Failure to challenge arbitrability in timely fashion and participating in the arbitration proceedings, in other words, will result in waiver of the right to object.* International Longshoremen's Assoc., AFL—CIO v. West Gulf Maritime Assoc., 594 F.Supp. 670 (S.D.N.Y.1984)[.]

*Id.* (emphasis added); *see also ConnTech Dev. Co. v. Univ. of Connecticut Educ. Props., Inc.,* 102 F.3d 677, 685 (2nd Cir. 1996) ("An objection to the arbitrability of a claim must be made on a timely basis, or it is waived."); *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1357 (9th Cir.1983) (unjust to permit appellant to challenge arbitration, after voluntary participation for several months, shortly before arbitrator's decision).

In sum, Respondents waived any challenge to arbitration by (1) actively seeking arbitration in the first instance, and then (2) lodging an untimely, *pro forma* objection. Respondents have also failed to identify any ground under 9 U.S.C. § 10 that would result in *vacatur* of the award. Accordingly, the Court **GRANTS** the Application and **ORDERS** judgment entered on the Arbitrator's award rendered January 9, 2002.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and to publish a copy on the Court's website at www.wvsd.uscourts.gov.