Samuel Z. BRYSON, III, et al., Plaintiffs,

v.

Kenneth A. GERE, et al., Defendants.

No. CIV.A.1:98 CV 03127.

United States District Court, District of Columbia.

June 26, 2003.

Nathan I. Finkelstein, Finkelstein & Horvitz, Bethesda, MD, for Plaintiffs.

John McLeod Bradham, Nixon Peabody, L.L.P., Washington, DC, Thomas H. Boyd, Winthrop & Weinstine, PA, St. Paul, MN, Paul Mayo Vincent, Ober, Kaler, Grimes & Shriver, Washington, DC, for Defendants.

**MEMORANDUM OPINION**

LAMBERTH, District Judge.

This case comes before the Court on plaintiffs' petition to correct, modify or vacate arbitration award [32]. This Court previously granted [27–28] defendants' motions [4, 12] to stay the proceedings pending completion of arbitration pursuant to the arbitration clause in the parties' original agreement. Now that the arbitration has been completed and the award of the arbitrator has been announced, plaintiffs seek an order declaring that the arbitration was non-binding. Defendants oppose plaintiffs' request and submit their own request that the Court issue an order confirming the arbitration award [33–34]. Upon consideration of the parties' filings and the applicable law, the Court finds that plaintiffs' motion should be denied, that the arbitration award should be confirmed, and that plaintiffs' claims as to all defendants should be dismissed.

## I. Background

This Court issued an Order [27] and Memorandum Opinion [28] dated March 9, 2000 which, *inter alia*, granted defendants' motion to stay the proceedings pending completion of arbitration. That opinion held, over plaintiffs' objections, that the arbitration clause[1] in the parties' original Partnership Agreement ("Agreement") was valid and binding, and pursuant to Section 3 of the Federal Arbitration Act, ordered a stay in the proceedings until the arbitration was completed. Mem. Op. [28] at 15–19. This Court imposed the stay as to all defendants, including those who were non-signatories to the Agreement (including its arbitration clause), Zedakah Foundation ("Zedakah") and Planned Investments, Inc. ("Planned Investments") on

the basis of its inherent equity powers. *Id.* at 20.

Subsequently, plaintiffs and defendant Kenneth A. Gere ("Gere"), the only remaining defendant who was also a signatory to the Agreement, submitted to arbitration (Floyd Collins, another general partner, also participated in the arbitration). After a five-day hearing, the arbitrator denied all of plaintiffs' claims in the Award of Arbitrator entered on August 1, 2002 ("Award") for lack of evidence, Plaintiffs' Supp. Pet. [32] Exh. 7. Plaintiffs now reassert their claim that the arbitration was non-binding and ask this Court to vacate the Award and/or clarify its earlier order to that effect.

Defendant Gere objects to plaintiffs' petition, arguing that the Award is binding as to any claims against him because he was a signatory to the. Agreement, which provided for a binding arbitration. Zedakah and Planned Investments, as non-parties to the arbitration and non-signatories to the Agreement, object to plaintiffs' petition on the basis that any claims against them are now precluded by the arbitration award in Gere's favor. More specifically, they argue that since plaintiffs' claims against Zedakah and Planned Investments are based on principal-agency theory and/or the doctrine of *respondeat superior*, defendant Gere's exoneration as an agent serves to exonerate him as a principal of those organizations. Plaintiffs reply that Zedakah and Planned Investments, as non-signatories and non-participants, lack standing to request dismissal of the Award and that the issue of collateral estoppel is not ripe until this Court has ruled on plaintiffs' petition to correct, modify or vacate the arbitration award.

---

**1.** Paragraph 15.11 of the Agreement provides: "Any controversy or claim arising out of or resulting from this Agreement, or the breach thereof, shall be first referred to arbitration in accordance with the rules and regulations of the American Arbitration Association."

## II. Discussion

### A. *Plaintiffs' Motion to Correct, Modify or Vacate Arbitration Award*

■ The parties concede, and this Court has previously determined, that this dispute is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. seq. (1988) ("FAA"). Diversity actions brought to determine the validity of an arbitration award fall within the provisions of the Act as long as the arbitration agreement involves or affects interstate commerce. *Fairchild & Co. v. Richmond, Fredericksburg & Potomac R.R. Co.*, 516 F.Supp. 1305, 1310 (D.D.C.1981) (Sirica, J.) The Agreement in this case, which formed a partnership among residents of several different states for real estate investment, falls within the scope of the FAA.

Under the FAA, a court may correct, modify or vacate an arbitration award only when there are grounds for doing so. Generally, in order to *vacate* an arbitration award, a court must find misconduct on the part of the arbitrator or other irregularities in the arbitration proceedings that resulted in prejudice against the rights of one party. 9 U.S.C. § 10. In order to *modify* or *correct* an award, Section 11 requires that the award is based on miscalculations, that it is in excess of the arbitrator's authority, or that other imperfections are present not relating to the merits of the controversy. 9 U.S.C. § 11. Under those limited circumstances, a court has authority to modify and correct the award "so as to effect the intent thereof and promote justice between the parties." *Id.*

■ Plaintiffs offer no basis on which this Court could assert the authority to correct, modify or vacate the Award of Arbitrator under the FAA. They rely on the assertion that the arbitration clause in the Agreement contemplated non-binding arbitration, which is essentially a question of contract interpretation. As such, any

decision on that question would provide an insufficient basis under the FAA for this Court to correct, modify or vacate the award.

■ The only other possible basis for altering the award appears in plaintiffs' response to defendants' attempt to assert collateral estoppel. Plaintiffs allege that their claims against Zedakah and Planned Investments should not be precluded because, *inter alia*, the arbitration proceeding was fraught with procedural deficiencies that denied plaintiffs the opportunity to fully and fairly litigate their claims. If plaintiffs intend to offer these alleged deficiencies as a basis upon which the Court may vacate the award, the effort must fail. Any misconduct alleged by the plaintiffs is on the part of defendants, not the arbitrator. Moreover, plaintiffs state that they lodged their complaints with the arbitrator and, although they were subsequently denied, plaintiffs do not assert any prejudicial error in the arbitrator's review of their objections. Absent substantial misconduct that prejudiced plaintiffs' case before the arbitrator, this Court has no authority to modify or vacate an award by a qualified arbitrator that is the result of a process that appears to have afforded plaintiffs an opportunity to fully and fairly adjudicate their claims. *See Fairchild & Co.*, 516 F.Supp. at 1314.

### B. *Plaintiffs' Motion to Clarify Order*

Notwithstanding this Court's ruling that the parties were bound to arbitrate their dispute, plaintiffs argue that the decision of the arbitrator is not binding on them. Consequently, they assert that they are free to pursue in litigation the claims which have been denied in arbitration. In support of this argument, plaintiffs rely on a case which states that "mandatory arbitration" and "binding arbitration" are "two

different things." *U.S. v. Bankers Ins. Co.*, 245 F.3d 315, 322 (4th Cir.2001) This Court acknowledges that there is a conceptual difference between binding and mandatory arbitration and thus that two parties could theoretically agree to mandatory non-binding arbitration. However, that it is merely possible provides an insufficient basis on which to conclude that it actually occurred in this case.

In assessing whether the Agreement binds the parties to the decision of the arbitrator, this Court first notes that federal policy strongly favors enforcement of arbitration clauses. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Significantly, this policy in favor of arbitration has been interpreted to impute a presumption that arbitration will be binding. *McKee v. Home Buyers Warranty Corp. II*, 45 F.3d 981, 985 (5th Cir.1995) ("We think that the 'federal policy favoring arbitration' covers more than simply the substantive scope of the arbitration clause ... *and encompasses an expectation that such procedures will be binding.*" (emphasis added) (citations omitted)).

█ Thus, even though the question of whether the Award of Arbitrator shall be binding is properly characterized as a question of contract interpretation, such interpretation must be conducted in light of this liberal federal policy. *McKee II*, 45 F.3d at 984–85 (quoting *Volt Info. Scis., Inc. v. Stanford Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)) ("[I]n applying general state-law principles of contract interpretation ... due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.")

█ Parties may overcome this policy favoring arbitration and the presumption that it will be binding by including in their agreement provisions to the contrary. Plaintiffs point to the use of "first referred" in the Agreement's arbitration clause as indicative of the parties' intent that the arbitration was to be merely a non-binding prerequisite to pursuing litigation or other avenues of resolution. However, such language does not overcome the policy and presumption favoring binding arbitration. Numerous courts have held that language implying that arbitration was a condition precedent to any other avenues of resolution is not sufficiently specific to call for non-binding arbitration. *McKee II*, 45 F.3d at 984; *Rainwater v. Nat'l Home Ins. Co.*, 944 F.2d 190, 194 (4th Cir.1991); *Duke v. Crop Growers Ins., Inc.*, 70 F.Supp.2d 711, 715 (S.D.Tex.1999) (respectively holding that clauses such as "shall precede," "shall be a condition precedent," and separate right-to-sue language, do not overcome the policy favoring arbitration). In this Court's opinion, "first referred" is sufficiently similar to the language used in these cases that it is reasonable to apply the same rule.

The Fourth Circuit explained that "condition precedent" language was traditionally included in arbitration clauses to overcome the federal courts' hostility toward enforcing such clauses. *Rainwater*, 944 F.2d at 194. Since the enactment of the FAA, courts are no longer reluctant to enforce arbitration clauses, so any "condition precedent" language is merely an artifact that should not be interpreted to indicate anything more than judicial confirmation or other subsequent procedures not undermining the binding nature of the arbitration. *Id.* Given this history and precedent, "first referred" is insufficiently specific to overcome the policy and presumption favoring binding arbitration.

█ Plaintiffs next allege that defendants' failure to include in the arbitration

clause express language indicating that the arbitration would be binding should be held to indicate an intent that the arbitration would not be binding. Plaintiffs point to standard clauses recommended by the American Arbitration Association ("AAA") which include express language that arbitration shall be binding and suggest that defendants' decision not to use those clauses in the Agreement indicates lack of intent to refer to binding arbitration. While the inclusion of express language such as "binding" or "final" would support an interpretation that the parties intended to refer to binding arbitration, it does not necessarily follow that the omission of such language indicates a contrary intent. Generally, a presumption in favor of a particular interpretation puts the parties on notice that if they wish to escape the default rule, they must do so explicitly, but an intent to invoke the default rule need not be expressly indicated. RESTATEMENT (SECOND) OF CONTRACTS § 202 (1981).

Similarly, plaintiffs' reliance upon the rule that ambiguities are to be construed against the drafter is unpersuasive. As noted above, the Agreement must be interpreted in light of the liberal federal policy which includes the expectation that arbitration shall be binding. Given this presumption, the "first referred" language is not sufficiently unclear to constitute an ambiguity. Even if it were, the rule of construing clauses against the drafter is not unilaterally dispositive when other decisive factors are present.[2]

■ Case law supports this interpretation. Courts have held that the "magic words" such as "final" or "binding" are unnecessary when the clause includes certain other indications of an intent to consent to binding arbitration. *Rainwater*, 944 F.2d at 193: *see also Commonwealth Edison v. Gulf Oil Corp.*, 541 F.2d 1263, 1266 (7th Cir.1976); *I/S Stavborg v. Nat'l Metal Converters, Inc.* 500 F.2d 424, 425 (2d Cir.1974); *Varley v. Tarrytown Assocs.*, 477 F.2d 208, 210 (2d Cir.1973). Moreover, plaintiffs' focus on the omission of explicit language indicating the binding nature of the arbitration fails to acknowledge that which is explicitly included: that the arbitration will be conducted under the rules and regulations of the AAA. Reference to rules in the clause effectively incorporates those rules in their entirety into the Agreement. *See, e.g., Stavborg*, 500 F.2d at 426. This is significant because under the AAA rules, all arbitrations are binding.[3] Consequently, reference to AAA rules and regulations is sufficient to make the arbitration binding. *Rainwater*, 944 F.2d at 193; *see also Commonwealth Edison*, 541 F.2d at 1272–73 (agreement to incorporate the rules sufficient to establish consent to entry of judgment if the rules so provided); *Stavborg*, 500 F.2d at 425 (explicit agreement to be bound by arbitration was not required but could be inferred by reference to rules which do provide for binding arbitration); *Varley*, 477 F.2d at 210 (inclusion of AAA rules is sufficient to incorporate them into agreement); *St. Lawrence Explosives Corp. v. Worthy*

---

**2.** RESTATEMENT (SECOND) OF CONTRACTS § 206 cmt. a states in part: "In cases of doubt, therefore, *so long as other factors are not decisive,* there is substantial reason for preferring the meaning of the other party" (emphasis added).

**3.** COMMERCIAL ARBITRATION RULE R–50(c) (AM. ARBITRATION ASS'N 2002), provides: "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." While the instant dispute is governed by the AAA rules in effect at the time the Agreement was executed, plaintiffs have not provided this Court with any evidence that a different rule was in effect at that time.

*Bros. Pipeline Corp.*, 916 F.Supp. 187, 190 (N.D.N.Y.1996) (arbitration clauses that refer to AAA rules trigger presumption that arbitration was intended to be binding); *Paley Assocs., Inc. v. Universal Woolens, Inc.*, 446 F.Supp. 212, 214 (S.D.N.Y.1978) ("It is now clearly the law that when the parties have unequivocally consented in their arbitration agreement to be bound by the current rules of the AAA they are 'deemed to have consented to the entry of judgment on any arbitration award.'" (citations omitted)).

Both parties advance arguments about whether plaintiffs' conduct of entering into arbitration under rules that the decision will be binding imputes consent to be bound. However, this Court declines to reach that issue. As discussed above, the imputed consent arises from the arbitration clause in the Agreement (which this Court has already held is valid and enforceable) so it is unnecessary to determine whether it might also arise from plaintiffs' subsequent conduct.

On the basis of the arguments discussed above, plaintiffs ask this Court to clarify its Opinion to declare that the arbitration award is non-binding under Fed.R.Civ.P. 60(b)(6), which provides that a court may relieve a party from a judgment or order for any reason justifying relief from the operation of judgment. This rule grants a court broad authority to vacate or amend judgments "whenever such action is appropriate to accomplish justice." *Klapprott v. U.S.*, 335 U.S. 601, 614–15, 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 266 (1949). While 60(b)(6) motions must be made within a reasonable amount of time after the judgment or order, this Court need not reach the question of whether plaintiffs' delay of approximately 30 months is reasonable. Rather, the motion fails because plaintiffs' arguments, addressed above, are insufficient to meet the requirement of "extraor-

dinary circumstances" to justify relief under Rule 60(b)(6). *Ackermann v. U.S.*, 340 U.S. 193, 199–200, 71 S.Ct. 209, 95 L.Ed. 207 (1950).

### C. *Plaintiffs' Motion for Reconsideration*

Plaintiffs' request that this Court "clarify its earlier ruling that plaintiffs were obligated to arbitrate" is more appropriately characterized as a motion for reconsideration than a Rule 60(b)(6) motion. In an effort to give plaintiffs every opportunity to make their case, this Court will consider plaintiffs' request under Fed.R.Civ.P. 59(e). Notwithstanding the fact that motions made under Rule 59 must be made within ten (10) days of the judgment that is being challenged, plaintiffs provide no grounds upon which this Court should reconsider its prior order.

■ District courts have broad discretion to grant or deny a motion for reconsideration. *Cobell v. Norton*, 226 F.Supp.2d 175, 177 (D.D.C.2002) (Lamberth, J.). The court may invoke its discretion and deny such a motion unless it finds an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice. *Id.* Plaintiffs have failed to direct this Court to any relevant changes in the law since March 9, 2000, proffered any new evidence, or convinced the Court that reconsideration of its order is necessary to correct a clear error or manifest injustice.

### D. *Defendants' Motion to Confirm the Award of Arbitrator*

■ Since this Court has denied plaintiffs' request to correct, modify or vacate the Award and has declined to modify its earlier order to indicate that the Award is non-binding, this Court shall consider defendants' request to confirm the Award.

Section 9 of the FAA governs confirmation of awards, providing in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9. All of the conditions are satisfied in the instant case. First, the parties have agreed that a judgment of the court shall be entered upon the Award because the AAA rules include this stipulation. *See Paley Assocs.*, 446 F.Supp. at 214. Second, jurisdiction is proper for this Court to confirm the Award because the Award was made in the District of Columbia, and also because when this Court stayed this case pending completion of arbitration, it retained jurisdiction for purposes of any appropriate proceedings upon completion of arbitration. *LaPrade v. Kidder. Peabody & Co.*, 146 F.3d 899, 903 (D.C.Cir.1998). Third, the defendants' requests for confirmation [33–34] sufficiently constitute an application to the court for an order confirming the Award. Fourth, defendants' application, first filed on November 12, 2002, occurs within one year from the August 1, 2002 date of the Award. Finally, this Court has already determined that the Award may not vacated, modified or corrected as prescribed in sections 10 and 11. Therefore, this Court

is bound to confirm the Award will enter judgment to that effect in the accompanying order.

### E. Defendants' Motion to Dismiss

■ Defendants Gere. Planned Investments and Zedakah Foundation request that this Court dismiss all remaining claims against them on the basis that such claims are barred by the collateral estoppel effect of the arbitration award. As both parties have filed arguments regarding this matter, this Court will treat defendants' request as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

■ Collateral estoppel, or issue preclusion, prevents parties from relitigating issues that have already been adjudicated. It seeks to conserve judicial resources, protect citizens from multiple lawsuits, and reduce the likelihood of inconsistent verdicts. *Montana v. U.S.*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). This Court must balance those concerns with the importance of safeguarding plaintiffs' opportunity to present its case.

### 1. Applicable Law

■ Because this Court is sitting in diversity, it must apply state substantive law. *Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Accordingly, if collateral estoppel were characterized as substantive law, then this Court would use the choice-of-law rules of the forum state in order to determine which state's law should apply. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Here, this Court would look to District of Columbia choice-of-law rules to determine whether its law or Minnesota law[4] should

---

**4.** Minnesota is the only other jurisdiction with

significant interest in this dispute. The Part-

apply to the question of whether collateral estoppel should preclude plaintiffs remaining claims.

 District of Columbia courts use a "governmental interests" analysis in choice-of-law cases. The test involves determining which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review. *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C.1995); *see also Hercules & Co. v. Shama Restaurant*, 566 A.2d 31 (D.C.1989); *Estrada v. Potomac Elec. Power Co.*, 488 A.2d 1359 (D.C.1985). Incorporated into the analysis are the four factors identified by the Restatement of Conflicts of Laws § 145:(1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; (4) where the relationship is centered. *Hercules & Co.*, 566 A.2d at 40–41. Additionally, part of the test of determining the jurisdiction whose policy would be most advanced is determining which jurisdiction has the most significant relationship to the dispute. *Id.* at 41 n. 18.

In this case, both the District of Columbia and Minnesota have an interest in furthering the equitable and efficiency policies underlying collateral estoppel. As this Court noted in its discussion of venue in its original opinion, a substantial portion of the events giving rise to the claim occurred in the District of Columbia; similarly, the solicitation, formation of the partnership, and the pre-purchase activity which forms the basis of plaintiffs' claims occurred in the District of Columbia. *Mem. Op.* 14–15.

When, as here, both jurisdictions have an interest in applying their law, "the forum law will be applied unless the foreign jurisdiction has a greater interest in the controversy." *Coleman*, 667 A.2d at 816 (citations omitted). Therefore, District of Columbia law should apply unless Minnesota has a greater interest in the controversy. Minnesota's interest derives from its status as defendants' place of domicile, the location of the subject property ("Edgewood") and the place of the partnership's incorporation. However, the center of the parties' relationship is more appropriately designated as the District of Columbia, and it is that relationship which forms the basis of this lawsuit. Under these circumstances, Minnesota cannot be said to have a greater interest in the controversy. Additionally, when the parties have not raised the issue of applicability of foreign law, the court is under no obligation to apply foreign law. *Rymer v. Pool*, 574 A.2d 283, 285 (D.C.1990). Hence, the law of the District of Columbia shall apply.

The foregoing indicates that, if collateral estoppel is considered to be substantive law, the state law which would apply is that of the District of Columbia. If however, collateral estoppel is considered to be a procedural rule, this Court should apply the collateral estoppel law as applied in the federal courts. *Hanna v. Plumer*, 380 U.S. 460, 472, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Unfortunately, case law is unclear whether collateral estoppel is procedural or substantive.[5] Collateral estoppel, like

---

nership was incorporated in Minnesota, defendants Gere, Zedakah and Planned Investments are domiciled in Minnesota and the property in which the Partnership invested is located in Minnesota. While several of the plaintiffs reside in various states adjoining the District of Columbia, Minnesota and the District of Columbia have more substantial connection to this case.

5. Several cases indicate that the rules of collateral estoppel are procedural. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 337, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) ("The law of

similar doctrines or rules, may be considered either procedural or substantive depending upon its effect in each case. *Cf. Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) (ruling that the statute of limitations is considered substantive or procedural depending on its effect). This Court need not address the question, however, because District of Columbia law of collateral estoppel is substantially similar to the rules applied in federal courts. Thus, whether collateral estoppel is considered to be procedural or substantive would not affect its application in this case. *See, e.g., Yamaha Corp.,* 961 F.2d at 254; *Hogue,* 728 A.2d at 614; *Parklane Hosiery Co.,* 439 U.S. at 326, 99 S.Ct. 645.

## 2. Issue Preclusion

The general rule of issue preclusion is set out in the Restatement: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the

judgment, the determination is conclusive in a subsequent action between the parties, whether on the same claim or a different claim." RESTATEMENT (SECOND) OF JUDGMENTS § 27. When, as here, the party attempting to assert collateral estoppel was not a party to the original action, the Restatement provides: "[a] party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue." *Id.* § 29.

The case law of the District of Columbia sets out essentially the same elements: "[i]ssue preclusion renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair

collateral estoppel, like the law in other procedural areas"); *Abbate v. U.S.,* 359 U.S. 187, 200 n. 4, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) ("[E]ssentially procedural concept such as collateral estoppel"); *Hall v. Clinton,* 285 F.3d 74, 81 n. 5 (D.C.Cir.2002) (The "difference in substantive law does not affect the application of issue preclusion" (citations omitted)); *Hunt v. Liberty Lobby,* 707 F.2d 1493, 1497 (D.C.Cir.1983) (holding that a federal court sitting in diversity should apply federal rules of res judicata in determining the effect to be given the judgment rendered by another federal court sitting in diversity); RESTATEMENT (SECOND) OF JUDGMENTS, CH. 1: SCOPE (1982) ("The law of res judicata is a subcategory of the law governing procedure").

Other cases indicate that collateral estoppel is substantive law. *See Gatewood v. Fiat,* 617 F.2d 820, 826 n. 11 (D.C.Cir.1980) (noting that federal courts sitting in diversity are unqualified to change the rules of collateral estoppel in the District of Columbia); *Semler v. Psychiatric Inst. of Washington, D.C.,* 575 F.2d 922, 930 (D.C.Cir.1978) (citing the Re-

statement of Conflicts of Laws for the proposition that local law of the first forum governs the preclusive effect of its judgment); *Lober v. Moore,* 417 F.2d 714, 718 (D.C.Cir.1969) (applying local law of collateral estoppel in a federal diversity action); *Ritchie v. Landau,* 475 F.2d 151, 154 (2d Cir.1973) ("In a diversity action in federal court the state law is controlling on the question of the applicability of the collateral estoppel doctrine to a given set of circumstances"); *Jones v. Ebrahimi-Zanganeh,* 1989 WL 4975, *1 (D.D.C.1989) (unpublished opinion) ("[A] federal court sitting in diversity must look to the applicable local law to determine whether, and the extent to which principles of collateral stoppel may be employed with regard to prior litigation in a state court").

Still other cases do not distinguish between federal and local rules of collateral estoppel. *See Yamaha Corp. of America v. U.S.,* 961 F.2d 245, 254 (D.C.Cir.1992); *Hogue v. Hopper,* 728 A.2d 611, 614 (D.C.1999) (both cite federal and local case law in delineating the elements of collateral estoppel).

opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential the judgment, and not merely dictum." *Wash. Med. Ctr. v. Holle*, 573 A.2d 1269, 1283 (D.C.1990); *see also Hogue*, 728 A.2d at 614. The assertion of non-mutual defensive collateral estoppel is also permitted by local law. *Jackson v. District of Columbia*, 412 A.2d 948, 952–53 (D.C.1980).

■ Issue preclusion doctrine in the federal courts of this jurisdiction provide that collateral estoppel is appropriate when three requirements are met: "[f]irst, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Yamaha Corp.*, 961 F.2d at 254. As to mutuality, that Court adopted the Restatement view. *Id.* at 254 n. 11; *see also Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C.Cir.1983). Similarly, the Supreme Court has held that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case" as long as the party against whom the earlier decision is asserted had a full and fair opportunity to litigate that issue in the earlier case. *Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

Thus, federal law is substantially similar to the local laws of the District of Columbia in providing that collateral estoppel precludes relitigation of an (1) identical issue (2) that was fully and fairly litigated and (3) determined by a valid judgment on the merits (4) in which the issue was es-

sential. While the federal standard includes consideration of equitable concerns of "working an unfairness," the District of Columbia standard does not explicitly include that requirement. This Court finds, however, that in the instant case the inclusion or exclusion of that element would not affect its disposition of the case. As explained below, this Court finds that plaintiffs have had ample opportunity to press their claims and are properly precluded from relitigating their claims against Zedakah and Planned Investments; thus applying collateral estoppel does not work an unfairness on plaintiffs.

### a. Identity of Issues

■ The most difficult question in this analysis is whether the issues which are now asserted by plaintiffs are substantially similar to those issues which were adjudicated and decided in arbitration. While there clearly exist some similarities between the claims now asserted against Zedakah and Planned Investments and those claims already adjudicated in arbitration, they are not absolutely identical if only because they charge a different party with wrongdoing. Thus, a court must "look beyond the labels of the claims and examine the single, certain and material point(s) arising out of the allegations and contentions of the parties." *Jackson*, 412 A.2d at 953–54 (citations omitted).

The Restatement identifies several factors to aid in the analysis: (1) whether there is substantial overlap between the evidence or the argument to be advanced; (2) whether the new evidence or argument involve application of the same rule of law; and (3) whether the pretrial preparation reasonably can be expected to have embraced the matter sought to be presented in the second. RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. c.

In this Court's view, all of plaintiff's claims against Zedakah and Planned Investments center on allegations that are identical to issues already decided in arbitration. Where the basic facts underlying the new claims are indistinguishable from the facts at issue in the prior adjudication, the new claims are properly precluded. *Schattner v. Girard*, 668 F.2d 1366, 1369 (D.C.Cir.1981) (per curiam); *Hogue*, 728 A.2d at 614; *see also Carr v. District of Columbia*, 646 F.2d 599, 608 n. 47 (D.C.Cir.1980); *Ritchie*, 475 F.2d at 155; *Paine & Williams Co. v. Baldwin Rubber Co.*, 113 F.2d 840, 843 (6th Cir.1940); *Goldstein v. Doft.* 236 F.Supp. 730, 732–33 (S.D.N.Y.1964).

For example, all of plaintiffs' claims against Zedakah that are not explicitly based on *respondeat superior* (set out in Counts II, III, IV, ¶¶ 47 and 49; and the new allegations in Plaintiffs' Reply at 10) are premised upon the allegation that Edgewood was sold for lower than market value. This underlying allegation is identical to the question, considered by the arbitrator, whether "Edgewood had a greater market value, or could have been sold for a higher price, than the amount realized in the sale to Zedakah." *Award of Arbitrator* at 2.

Similarly, plaintiffs' claims against Planned Investments are based on facts already determined. Planned Investments is named as a co-defendant in Counts II, III, IV in allegations that it knowingly benefitted from Gere's misconduct "by, e.g., receiving management fees from Zedakah."[6] *Complaint* ¶¶ 73, 82, 92. These claims—as well as many of those asserted against Zedakah discussed above—are premised on the allegation that Gere was

engaged in misconduct in the course of his duty to the partnership. As such, they are identical to the question of whether Gere received any improper financial benefits in the course of his service, misled plaintiffs or withheld information or distributions from plaintiffs, all of which were decided by the arbitrator in the negative. *Award of Arbitrator* at 3.

Count V asserts that Planned Investments and the General Partners violated the District of Columbia Consumer Protection Act by misrepresenting information relating to the investment in and sale of Edgewood. Count VI demands an accounting from Planned Investments and the general partners. The factual basis for these findings—whether any payments were improperly disbursed from the partnership—are identical to those considered by the arbitrator, that is, whether plaintiffs had received all that they were entitled to or defendants had received any improper financial benefits; and whether defendants could have produced a more favorable outcome for the partnership. *Award of Arbitrator* at 3. Under the Restatement factors, the original evidence and arguments alleging misconduct of the partners overlap substantially with the evidence and arguments alleging improper disbursement of partnership funds. RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. c.

The only other claims against Zedakah and Planned Investments are based upon principal-agent theory or the doctrine of *respondeat superior*. Plaintiff does not contest that exoneration of an agent precludes the same claims against the principal and vice versa. *Lober*, 417 F.2d at 718; 47 AM. JUR. 2D *Judgments* § 688 (1995);

---

**6.** This Court assumes that plaintiffs intended to refer to Planned Investments' receipt of management fees from the *Litchfield Partnership*, nor from Zedakah, as plaintiffs would

have no standing to challenge alleged transactions between Zedakah and Planned Investments.

RESTATEMENT (SECOND) OF JUDGMENTS § 51. Notably, this doctrine is logically encompassed in the broader doctrine of defensive non-mutual preclusion. Given that the applicable local and federal law allows for non-mutual defensive collateral estoppel, see discussion *supra*, at 14–15, plaintiffs' claims against Planned Investments and Zedakah which impute liability based on Gere's alleged wrongdoing are properly precluded.

Thus, all of plaintiffs' claims rely on the same underlying facts as those claims denied by the arbitrator. Plaintiffs' claims depend upon the assertion that partnership funds were improperly disbursed. Their claims involve the same rules of law—fraud, misrepresentation and breach of fiduciary duty—that were asserted against the general partners. Similarly, their claims are logically included within, and thus not severable from, the question of whether any of the general partners engaged in misconduct with regard to their duties to the partnership. *See Ritchie*, 475 F.2d at 154; *Jordan v. Wash. Metro. Area Transit Auth.*, 548 A.2d 792, 796 (D.C. 1988). Preparation for arbitration can reasonably be expected to have encompassed all of these remaining issues. In sum, plaintiffs' claims that Zedakah and Planned Investments were involved in wrongful taking of funds from the partnership cannot possibly be true in light of the arbitrator's decision that no funds were wrongfully taken from the partnership.

#### b. Actually Litigated

The Restatement explains that an issue was actually litigated when it is "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. d. This element serves to prevent preclusion of issues which might have been but were not actu-

ally litigated and determined in a prior action. *Id.* § 27, cmt. e. Since the identical issues are the facts underlying plaintiffs' claims, the appropriate question is whether those facts were actually adjudicated in the arbitration. *See Otherson*, 711 F.2d at 275; *Jackson*, 412 A.2d at 954. Those underlying facts are whether Edgewood was sold for less than market value, whether Gere was engaged in any misconduct relating to his duties as a general partner; and whether Planned Investments received any improper disbursements from the partnership. Plaintiffs presented all of these claims in their original claims alleging fraud and misrepresentation. Additionally, the arbitrator decided each issue because he held that there was no persuasive evidence that Edgewood could have been sold for a higher price, that Gere intentionally misled or purposefully withheld information; that the limited partners had not received all of the distributions to which they were entitled or that the general partners had received any improper benefits; or that the general partners could have produced a more favorable financial outcome for the partnership. *Award of Arbitrator* at 2–3. The basic facts underlying plaintiffs' claims—that the partnership funds were mismanaged—were actually considered and determined by the arbitrator. Indeed, the allegation of financial mismanagement forms the center of the dispute; as such, the arbitrator was obligated to, and did, consider that claim.

#### c. Valid Judgment on the Merits

A judgment is valid when it was rendered by a court of competent jurisdiction. In this case, the arbitrator had jurisdiction over the dispute and the defendants by virtue of the arbitration clause in the Agreement. As discussed *supra*, at 10, this Court has proper jurisdiction to confirm the Award of Arbitrator. Therefore,

both the arbitrator's judgment and this Court's judgment are valid.

Similarly, the judgment of the arbitrator is on the merits of the case because it ruled on plaintiffs' claims as established by the evidence. Applicable federal and local law provide that the properly rendered decisions of an arbitrator have preclusive effect on a subsequent law suit. *Sanders v Wash. Metro. Area Transit Auth.,* 819 F.2d 1151, 1157 (D.C.Cir.1987); *Hogue,* 728 A.2d at 614 (both citing *Schattner,* 668 F.2d at 1368); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 84.

### d. Essential to the Judgment

Finally, the issues sought to be precluded were essential to the judgment. This element serves to prevent preclusion based on mere dictum or other portions of the judgment which were not necessary to the judgment. Here, the Award of Arbitrator clearly demonstrates which issues the arbitrator considered, and his final disposition on each point. As noted previously, plaintiffs' remaining issues, all of which depend on the allegation of mismanagement of partnership funds, are so central to the dispute that the arbitrator was obliged to, and did, consider them. As such, they were necessary to the judgment.

### F. Conclusion

This Court does not lightly impose collateral estoppel to preclude a party's claims. This Court has painstakingly considered plaintiffs' claims and concludes that plaintiffs have already adjudicated issues identical to those now asserted; that the adjudication provided plaintiffs with an opportunity to fully and fairly litigate their claims; that the arbitrator determined those issues as essential to a valid judgment on the merits. Consequently, plaintiffs may not litigate the same issues against new adversaries.

A separate order shall issue this day.

### Order

Upon consideration of Plaintiffs' petition filed October 28, 2002[32], it is hereby ORDERED that Plaintiffs' Petition to Correct, Modify or Vacate Arbitration Award and to Clarify Order Entered on March 9, 2000[32] is DENIED.

The Court shall treat Defendant Zedakah Foundation's Response in Opposition to Plaintiffs' Petition to Correct, Modify or Vacate Arbitration Award and to Clarify Order Entered on March 9, 2000[33] as a Motion to Request Confirmation of Arbitration Award and as a Motion to Dismiss. Upon consideration thereof, it is hereby ORDERED that Defendant Zedakah Foundation's Motion to Confirm the Arbitration Award [33] is GRANTED. It is further

ORDERED that Defendant Zedakah Foundation's Motion to Dismiss [33] is GRANTED.

The Court shall treat Defendant Kenneth A. Gere and Planned Investments, Inc.'s Response in Opposition to Plaintiffs' Petition to Correct, Modify or Vacate Arbitration Award and to Clarify Order Entered on March 9, 2000[34] as a Motion to Request Confirmation of Arbitration Award and as a Motion to Dismiss. Upon consideration thereof, it is hereby ORDERED that Defendant Kenneth A. Gere and Planned Investments, Inc.'s Motion to Confirm the Arbitration Award [34] is GRANTED. It is further

ORDERED that Defendant Kenneth A. Gere and Planned Investments, Inc.'s Motion to Dismiss [34] is GRANTED. It is further

ORDERED that the arbitration award is hereby CONFIRMED, and judgment

shall be entered thereon dismissing this case with prejudice.

SO ORDERED.